UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

GREEN MOUNTAIN HOLDINGS
(CAYMAN) LTD.,

                Plaintiff,

         -against-

501 LAFAYETTE AVE LLC, SHANITA
JONES,

                Defendants.

-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21-CV-5844 (MKB) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Green Mountain Holdings (Cayman) LTD ("Green Mountain" or "Plaintiff") initiated this action on October 20, 2021, against Defendants 501 Lafayette Ave LLC ("501 Lafayette LLC") and Shanita Jones. (Complaint ("Compl."), ECF No. 1.) Plaintiff seeks to foreclose on a mortgage encumbering the property at 501 Lafayette Avenue, Rockville Centre, New York 11570 (known on the Nassau County Tax Map as Section 38, Block 110, Lots 480–83) (referred to herein as the "501 Lafayette Avenue Property" or the "Property"), pursuant to the New York Real Property Actions and Proceedings Law ("RPAPL") § 1301 *et seq.* (*Id.* ¶ 1.)[1] Plaintiff also alleges damages, including unpaid

---

[1] The Court takes judicial notice of publicly filed documents on the Nassau County, New York Land Records Viewer website related to the Property. *Cf. Fawn Second Ave. LLC v. First Am. Title Ins. Co.*, 610 F. Supp. 3d 621, 628 (S.D.N.Y. 2022) (noting that the court took "judicial notice of public documents relating to the Property . . . as reflected by the [New York City property records website]"). The record listing for the 501 Lafayette Avenue Property notes that the land contains a dwelling that is a "one family year-round residence." Nassau County, New York Land Records Viewer – 501 Lafayette Ave., Rockville Centre, NY 11570, https://lrv.nassaucountyny.gov/info/38110++04800/ (last visited Aug. 15, 2023) (property description).

principal in the amount of $265,000, plus accrued interest. (Aff. of Amounts Due, ECF No. 21-6, ¶ 5.)

Currently pending before this Court is Plaintiff's motion for default judgment, which the Honorable Margo K. Brodie referred to the undersigned magistrate judge for a report and recommendation. (*See* Second Mot. for Default J., ECF No. 21; May 18, 2023 ECF Order Referring Motions.) For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

Plaintiff alleges that on August 3, 2020, Defendant 501 Lafayette LLC executed a Consolidated Mortgage in favor of Golden Bridge LLC, doing business as Golden Bridge Funding LLC ("Golden Bridge"), for $265,000 plus interest, secured by the 501 Lafayette Avenue Property. (Compl., ECF No. 1, ¶ 8; Consolidation, Extension, and Modification Agreement ("Consolidated Mortgage"), ECF No. 1-1, at ECF pp. 3–12.) Plaintiff states that the agreement was recorded in the Nassau County Clerk's Office on November 17, 2020, at Liber 44735, Page 920. (Compl., ECF No. 1, ¶ 8; Consolidated Mortgage, ECF No. 1-1, at ECF p. 4.) Also on August 3, 2020, Plaintiff alleges that Defendant 501 Lafayette LLC executed and delivered a Consolidated, Restated and Amended Note to Golden Bridge for $265,000. (Compl., ECF No. 1, ¶ 9; Consolidated Note and Addenda, ECF No. 1-1, at ECF pp. 13–16.) Plaintiff claims that Defendant Jones executed a guaranty of payment on August 3, 2020, personally guaranteeing payment of the note and mortgage to the lender, its successors, and assigns. (Compl.,

2

ECF No. 1, ¶ 9; Consolidated Note and Addenda, ECF No. 1-1, at ECF pp. 13–16.)[2]
Plaintiff states that the Consolidated Mortgage was assigned from Golden Bridge to
Plaintiff on August 13, 2021. (Compl., ECF No. 1, ¶ 10; Assignment of Mortgage, ECF
No. 1-1, at ECF pp. 68–69.)

Plaintiff further claims that Defendant 501 Lafayette LLC did not comply with
the terms of the mortgage by failing to remit the payment due on June 1, 2021, and that
the default continues to date. (Compl., ECF No. 1, ¶ 13.) Plaintiff states that it sent a
"Default Notice" to both Defendants, advising them of the acceleration of the loan, in
August 2021. (*Id.* ¶ 14; Default Notice, ECF No. 1-1, at ECF pp. 71–73 (default notice),
ECF p. 74 (affidavit of mailing).)[3]

## II. Procedural History

As noted, Plaintiff commenced this action on October 20, 2021. (Compl., ECF
No. 1.) Plaintiff brings this action under diversity jurisdiction; Plaintiff states that it is a
corporation organized under the laws of the Cayman Islands with a principal place of
business in Miami, Florida. (*Id.* ¶¶ 2, 6.) Plaintiff further avers that Defendant 501
Lafayette LLC is a single-member LLC (whose sole member is Defendant Jones), and
that both Jones and 501 Lafayette LLC are citizens of New York. (*Id.* ¶¶ 3–4.) On
November 11, 2021, Plaintiff filed proof of service as to Defendant 501 Lafayette LLC,
indicating it had been served through the New York Secretary of State on October 28,

---

[2] Plaintiff also attached to its complaint an occupancy affidavit, signed by Defendant Jones, that states: "I hereby state that the subject property is being purchased/utilized for investment purchases [sic] only. The premises will not be used as a residence for myself or any members of my immediate family." (Consolidated Note and Addenda, ECF No. 1-1, at ECF p. 66 (occupancy affidavit).)

[3] Plaintiff states that "90-day Notices were not required pursuant to Real Property Actions and Proceedings Law ('RPAPL') Section § 1304(1) as this is not a residential home loan, but a commercial loan." (Compl., ECF No. 1, ¶ 14.)

3

2021. (Aff. of Service, ECF No. 8.) On January 7, 2022, Plaintiff filed a status report, requesting additional time to effectuate service on Defendant Shanita Jones; this request was granted on January 10, 2022, extending Plaintiff's deadline for service to February 8, 2022. (Jan. 7, 2022 Status Report, ECF No. 9; Jan. 10, 2022 ECF Order.) Plaintiff again requested an extension of time on February 7, 2022, which was granted, extending Plaintiff's deadline for service to March 25, 2022. (Pl.'s Mot. for Extension of Time to File, ECF No. 10; Feb. 8, 2022 ECF Order.) On March 2, 2022, Plaintiff filed proof of service as to Defendant Jones, indicating that Jones had been served at her "place of residence" on February 18, 2022, at the 501 Lafayette Avenue Property.[4] (Aff. of Service, ECF No. 11.) Defendant 501 Lafayette LLC's answer was due on November 18, 2021, and Defendant Jones's answer was due on March 11, 2022. (*See* Affs. of Service, ECF Nos. 8, 11.)

### A. Plaintiff's First Motion for Default Judgment

On March 14, 2022, Plaintiff requested a certificate of default as to both Defendants. (Request for Certificate of Default, ECF No. 12.) On March 18, 2022, the Clerk of Court entered a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, due to Defendants' failure to appear or otherwise defend this action. (Clerk's Entry of Default, ECF No. 13.) Plaintiff then moved for default judgment against Defendants on April 6, 2022, and the motion was referred to the undersigned magistrate judge for a report and recommendation by Judge Brodie that same day. (Mot. for Default J., ECF No. 14.; Apr. 6, 2022 ECF Order Referring Motion.) The Court then scheduled a telephonic default motion hearing for May 12, 2022, and directed the

---

[4] Plaintiff's affidavit of service states that Defendant Jones was served by delivering the documents to "Jane Doe, name refused, co-occupant." (Aff. of Service, ECF No. 11 (capitalization altered).)

4

Clerk of Court to mail formal written notice to Defendants at all available addresses. (Apr. 13, 2022 ECF Scheduling Order; Notice to Defs., ECF No. 15.) On May 12, 2022, the Court held the telephonic default motion hearing. (May 12, 2022 ECF Minute Entry and Order.) Counsel for Plaintiff attended, but no appearance was made by Defendants. (*Id.*) The Court ordered that "Plaintiff shall serve the Request for Certificate of Default [ECF No.] 12 and the Clerk's Entry of Default [ECF No.] 13 on Defendants and file proof of service on the docket by 5/13/2022," and directed the Clerk of Court to mail a copy of the Order to Defendants. (*Id.* (emphasis omitted).) Plaintiff filed proof of service of the default motion on May 13, 2022. (Aff. of Service, ECF No. 17.)

On September 27, 2022, the Court entered an order seeking clarification of several details concerning Plaintiff's motion for default judgment and directing Plaintiff to file a letter or supplemental authority by October 14, 2022. (Sept. 27, 2022 ECF Order.) After the Court granted two motions for extensions of time, Plaintiff filed a letter, providing additional details, requesting that its initial motion for default judgment be withdrawn, and seeking leave to file a renewed motion for default judgment. (*See* Mots. for Extension of Time, ECF Nos. 18–19; Oct. 17, 2022 ECF Order; Nov. 15, 2022 ECF Order; Pl.'s Ltr., ECF No. 20.) The Court granted Plaintiff's request to withdraw the initial default motion and to file a renewed motion for default judgment by January 20, 2023. (Dec. 16, 2022 ECF Order.)

### B. Plaintiff's Second Motion for Default Judgment

Plaintiff filed a second motion for default judgment on January 19, 2023. (Second Mot. for Default J., ECF No. 21.) On March 15, 2023, the Court scheduled a telephonic motion hearing for April 4, 2023, and again directed the Clerk of Court to mail a copy of the Order and a formal notice of the default motion hearing to Defendants at all available addresses. (Mar. 15, 2023 ECF Scheduling Order; Notice to Defs., ECF No. 22.)

At the April 4, 2023 hearing, Defendant Jones appeared *pro se* and indicated her intent to hire counsel for herself and Defendant 501 Lafayette LLC. (Apr. 4, 2023 ECF Minute Entry and Order.) The Court temporarily placed Plaintiff's motion in abeyance, set a deadline of April 28, 2023, for Defendants to have counsel enter a notice of appearance, and scheduled a status conference for May 11, 2023. (*Id.*) Counsel for Defendants entered a notice of appearance on April 27, 2023. (Notice of Appearance, ECF Nos. 23, 24.)

Counsel for all parties appeared at the May 11, 2023 status conference. (May 11, 2023 ECF Minute Entry.) The Court directed the parties to meet and confer and to file a joint status report by May 18, 2023, indicating "whether Plaintiff agrees to withdraw the pending motion and/or vacate the entry of default." (*Id.*) On May 17, 2023, Plaintiff submitted a status report on consent of both Defendants, indicating that Defendants intended to file a motion to vacate the defaults and proposing a briefing schedule. (May 17, 2023 Status Report, ECF No. 25.) On May 18, 2023, Judge Brodie referred Plaintiff's second motion for default judgment and Defendants' anticipated motion to vacate the default to the undersigned magistrate judge for a report and recommendation. (May 18, 2023 ECF Order Referring Motions.) The Court adopted the parties' proposed briefing schedule, directing Defendants to serve their opening motion by June 28, 2023. (May 19, 2023 ECF Order.) No proof of service was filed by the stated deadline.

On July 12, 2023, the Court again directed Defendants to file proof of service of their opening motion, this time by July 14, 2023. (July 12, 2023 ECF Order.) On the same day, Plaintiff filed a letter indicating it was never served with any motions from Defendants, and requesting that its second motion for default judgment "be decided by the Court." (Pl.'s July 12, 2023 Ltr., ECF No. 26.) The next day, the Court directed Defendants to respond to Plaintiff's letter by July 27, 2023. (July 13, 2023 ECF Order.)

6

The following day, the Court directed Defendants to respond to Plaintiff's second default motion by July 27, 2023. (July 14, 2023 ECF Order.) The Court noted that, "[i]n the event that Defendants fail to respond, the Court will deem the motion unopposed, and any efforts to vacate the default . . . abandoned." (*Id.* (emphasis omitted).)

On July 27, 2023, Defendants filed an opposition to Plaintiff's motion for default judgment. (Defs.' Initial Opp'n, ECF No. 27.)[5] Defendants' filing was illegible, and the Court ordered Defendants to re-file, which Defendants did on July 31, 2023. (July 28, 2023 ECF Order; Renewed Defs.' Opp'n ("Defs.' Opp'n"), ECF No. 29.) Defendants' filing consisted of (1) a notice of cross-motion, (2) an affidavit by Defendant Jones, (3) an affirmation by Defendants' counsel, and (4) Defendants' proposed verified answer and counterclaims. (Defs.' Opp'n, ECF No. 29.) Defendant Jones's affidavit states, in pertinent part: "After I received the plaintiff's foreclosure summons and complaint I was scared and confused. I contacted the plaintiff in this matter and spoke to a representative. The plaintiff's representative advised me that there was nothing that I could do to save my home from foreclosure." (Jones Aff., ECF No. 29, at ECF p. 4, ¶ 8.) Jones also stated: "Based upon the representation of the plaintiff's representative, I took no . . . action in response to the plaintiff's complaint until I finally spoke to my attorney regarding this matter." (*Id.* ¶ 9.)

---

[5] Although the submission filed is entitled "Notice of Cross Motion" on the first page, the submission does not include a memorandum of law in support of the motion, as required by E.D.N.Y. Local Civil Rule 7.1. As opposed to denying Defendants' purported cross-motion to vacate the entry of default outright for lack of compliance with the E.D.N.Y. Local Civil Rules, the Court construes it as an opposition to Plaintiff's motion for default judgment. *See, e.g., Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, P.C.*, No. 16-CV-4762 (LTS) (KNF), 2019 WL 6138530, at *1 (S.D.N.Y. Oct. 2, 2019) ("[F]ailure to comply with . . . Local Civil Rule 7.1 of this court, warrants the denial of [the purported] motion.").

Plaintiff requested an extension of time to respond to Defendants' opposition, which was granted, extending Plaintiff's deadline to August 8, 2023. (Pl.'s July 31, 2023 Mot. for Extension of Time, ECF No. 28; Aug. 1, 2023 ECF Order.) On August 8, 2023, Plaintiff filed its reply. (Pl.'s Mem. in Opp'n to Defs.' Cross-Mot. to Vacate Default ("Pl.'s Mem."), ECF No. 30.) Defendants did not submit a reply in support of their opposition by the August 11, 2023 deadline.

For the reasons discussed herein, the Court respectfully recommends that Plaintiff's motion for default judgment be denied.

## DISCUSSION

### I. Legal Standards

#### A. Default Judgment

Federal Rule of Civil Procedure 55 establishes the procedures for obtaining and vacating entry of a default judgment. First, Rule 55(a) provides that the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Thereafter, a plaintiff may move for a default judgment under Rule 55(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

Following entry of a default, Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause." *See Meehan v. Snow*, 652 F.2d 274, 276 n.5 (2d Cir. 1981) (per curiam) ("Entering a default pursuant to Rule 55(a) and affording a

defendant an opportunity to move to vacate it pursuant to Rule 55(c) is the preferable course . . . ."). Evaluating "good cause" under Rule 55(c) is "left to the sound discretion of a district court." *Enron Oil*, 10 F.3d at 95. When determining whether to relieve a party from default, courts look to three main factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* at 96; *see also Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001); *G&G Closed Cir. Events, LLC v. Lopez*, No. 21-CV-7164 (KMK), 2022 WL 633875, at *1 (S.D.N.Y. Mar. 4, 2022).[6]

The district court must also determine, at the outset, whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).[7] This is because "a defendant's default does no more than concede the

---

[6] As a general rule, "[d]efaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits." *Meehan*, 652 F.2d at 277; *see also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Strong public policy favors resolving disputes on the merits."); *Kauhsen v. Aventura Motors, Inc.*, No. 09-CV-4114, 2010 WL 2301289, at *3 (E.D.N.Y. June 7, 2010) (observing that "[d]efault judgments are generally disfavored") (citing *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977)). "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

[7] Whether a plaintiff has adequately established its asserted claim is relevant to the second *Enron Oil* factor, "whether [the] defendant has a meritorious defense." *Mason Tenders Dist. Council v. Duce Constr. Grp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003). "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co.*, 92 F.3d at 61. Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th

complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Said v. SBS Elecs., Inc.*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *report and recommendation adopted as modified*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2020); *see Frank Brunkhorst Co. v. Castellini*, No. 17-CV-2324 (AMD) (ST), 2018 WL 1377302, at *2 (E.D.N.Y. Mar. 19, 2018) (explaining that a party moving for default judgment must establish that "on the law it is entitled to the relief it seeks, given the facts as established by the default" (quotation marks omitted)).

**B. New York Mortgage Foreclosure**

"In a mortgage foreclosure action brought under New York law, a plaintiff makes a prima facie case . . . by producing: 1) the mortgage and the note . . . ; 2) proof of the mortgagor's default; and 3) proof of 'notice to the debtor of that default.'" *Plenitude Cap. LLC v. Utica Ventures, LLC*, No. 18-CV-2702 (MKB) (RER), 2019 WL 4014840, at *4 (E.D.N.Y. June 11, 2019), *report and recommendation adopted*, 2019 WL 3543610 (E.D.N.Y. Aug. 5, 2019) (quoting *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 79 (E.D.N.Y. 2019)).

1. *RPAPL § 1303 Notices*

As to the New York notice requirements, under RPAPL § 1303, a foreclosing party in an action involving residential real property must provide notice to "(a) any mortgagor if the action relates to an owner-occupied one-to-four family dwelling; and (b) any tenant of a dwelling unit," with specific formatting and content requirements for

---

Cir. 1988)). Weighing the meritorious defense factor in favor of default presumes, however, that the plaintiff has "demonstrate[d] that the allegations set forth in the complaint state valid claims." *United States v. McDermott*, No. 12-CV-4440 (DRH) (AKT), 2014 WL 1272566, at *4 (E.D.N.Y. Feb. 14, 2014), *report and recommendation adopted*, 2014 WL 917267 (E.D.N.Y. Mar. 10, 2014).

such notices. RPAPL § 1303(1); *see id.* § 1305(3) ("[A] successor in interest of residential real property shall provide written notice to all tenants in the same manner as required by [§ 1303(4)] . . . ."); *see also* N.Y. Real Prop. § 265-a (Home Equity Theft Prevention Act ("HETPA")); *First Nat'l Bank of Chicago v. Silver*, 899 N.Y.S.2d 256, 258 (N.Y. App. Div. 2d Dep't 2010) (explaining that "HETPA . . . requires the foreclosing party in a residential mortgage foreclosure action to deliver statutory-specific notice to the homeowner, together with the summons and complaint" pursuant to RPAPL § 1303(1)). The required § 1303 notice for a mortgagor who resides in an owner-occupied one-to-four family dwelling must contain specific language, starting with "Help for Homeowners in Foreclosure[.] New York State Law requires that we send you this notice about the foreclosure process. Please read it carefully. . . . You are in danger of losing your home." RPAPL § 1303(3). Similarly, the § 1303 notice required to be sent to a tenant of a dwelling subject to foreclosure has specific language requirements, starting with "Notice to Tenants of Buildings in Foreclosure[.] New York State Law requires that we provide you this notice about the foreclosure process. Please read it carefully," and including a paragraph, in all capitalized letters, regarding tenant rights and protections. RPAPL § 1303(5). Section 1303 notices must "be delivered with the summons and complaint." RPAPL § 1303(2).

"[C]ourts that have considered the character of the [RPAPL § 1303] notice have consistently interpreted HETPA's notice requirement as a mandatory condition or condition precedent. That is, the foreclosing party has the burden of showing compliance therewith and, if it fails to demonstrate such compliance, the foreclosure action will be dismissed." *First Nat'l Bank of Chicago*, 899 N.Y.S.2d at 259 (citations omitted) (collecting cases); *Onewest Bank, N.A. v. Mahoney*, 62 N.Y.S.3d 144, 146 (N.Y. App. Div. 2d Dep't 2017) ("Proper service of an RPAPL 1303 notice is a condition

precedent to the commencement of a foreclosure action, and noncompliance mandates dismissal of the complaint." (citations omitted)); *Plenitude Cap. LLC*, 2019 WL 4014840, at *5 ("A foreclosing mortgagee that does not clearly establish compliance with RPAPL's notice requirements, including those set forth under Section 1303, fail[s] to meet its prima facie burden of establishing its entitlement to judgment as a matter of law." (quotation marks omitted)). "A plaintiff's failure to comply with the notice requirements of RPAPL [§] 1303 may be raised 'at any time during an action.'" *Wells Fargo Bank, N.A. v. Coffey*, 113 N.Y.S.3d 164, 165 (N.Y. App. Div. 2d Dep't 2019) (quoting *First Nat'l Bank of Chicago*, 899 N.Y.S.2d at 257) (emphasis in *Wells Fargo Bank, N.A.* omitted). Further, a "court must determine whether a plaintiff has complied with [RPAPL notice requirements], even on a default judgment motion, because failure to comply with [these requirements] is a sufficient basis to deny foreclosure relief." *U.S. Bank Nat'l Ass'n ex rel. RMAC Tr., Series 2016-CTT v. Christian*, No. 19-CV-427 (CBA) (RML), 2020 WL 3918566, at *3 (E.D.N.Y. Feb. 25, 2020) (citations omitted), *report and recommendation adopted*, 2020 WL 3893015 (E.D.N.Y. July 10, 2020).

    2. *RPAPL § 1320 Special Summons*

In addition to the § 1303 notices, under RPAPL § 1320, a "[s]pecial summons" with specific formatting and content requirements is required to be served in connection with actions to foreclose on residential properties containing no more than three units. *See* RPAPL § 1320 (requiring the summons to contain specific notice, beginning with "NOTICE[.] YOU ARE IN DANGER OF LOSING YOUR HOME," and containing, *inter alia*: "If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home"). Compliance with RPAPL

12

§ 1320 is a mandatory requirement in mortgage foreclosure actions. *Aronson v. Callahan*, 83 N.Y.S.3d 792, 794 (N.Y. Sup. Ct. 2018) ("Inasmuch as the plaintiff admits that he failed to comply with the statutory language of RPAPL § 1320 in his actual summons, that failure is not excused, and the complaint must be dismissed."); *Windward Bora, LLC v. Sotomayor*, No. 21-CV-7161 (CS), 2023 WL 2575582, at *9 (S.D.N.Y. Mar. 20, 2023) ("Here, the 2019 Action was similarly dismissed for failure to satisfy a condition precedent to suit — namely, compliance with RPAPL § 1303 and § 1320."), *appeal filed*, No. 23-546 (Apr. 11, 2023). The "special summons" pursuant to RPAPL § 1320 must be served in addition to (not instead of) ordinary summons. *Windward Bora, LLC*, 2023 WL 2575582, at *5–6.

## II. Analysis

The Court notes that Plaintiff has alleged compliance with RPAPL § 1302, which concerns requirements surrounding high-cost home loans and subprime home loans. (Compl., ECF No. 1, ¶ 16.) In addition, Plaintiff has attached two notices to its complaint that it sent to Defendants. (FDCPA Notice, ECF No. 1-1, at ECF pp. 70–73 (notice pursuant to the Fair Debt Collection Practices Act); COVID-19 Notice, ECF No. 1-1, at ECF pp. 76–80 (notice pursuant to the COVID-19 Emergency Protect Our Small Businesses Act of 2021).) Defendant 501 Lafayette LLC, the party listed on the relevant financial agreements, is not a natural person, and thus the loans at issue in this case are not "home loan[s]" under the RPAPL, and do not require notices under § 1304. RPAPL § 1304(6)(a)(1)(i). (*See also* Compl., ECF No. 1, ¶ 14.)

However, based on the present record, Plaintiff has failed to clearly demonstrate adequate compliance with the notice requirements of RPAPL § 1303, and the service of the special summons mandated by RPAPL § 1320. Accordingly, "Plaintiff fails to

establish its prima facie case for foreclosure and sale." *Plenitude Cap. LLC*, 2019 WL 4014840, at *4.

### A. RPAPL § 1303

As set forth above, RPAPL § 1303 requires specific notice to be sent to "any mortgagor" if the foreclosure relates to an owner-occupied one-to-four family dwelling, and "any tenant of a dwelling unit" in a residential real property mortgage foreclosure action. RPAPL § 1303(1)(a), (b). The Property here is a one-to-four family dwelling. *See supra* note 1. However, on the record before the Court, Plaintiff has not clearly established whether the Property was owner-occupied by Defendant Jones or whether there were any tenants residing there who were provided with the notice required for a tenant.

Some factual allegations suggest that Defendant Jones herself was residing at the Property. Plaintiff's affidavit of service, for example, demonstrates Plaintiff's apparent understanding that Defendant Jones was living at, and that one or more other individuals were living at, the 501 Lafayette Avenue Property at the time this case was initiated. (Aff. of Service, ECF No. 11 (indicating service was effected on Defendant Jones by serving "Jane Doe, name refused, co-occupant" (capitalization altered)); *id.* ("Said premises is defendant's place of residence within the state." (emphasis omitted).)[8] With that affidavit of service for Defendant Jones, Plaintiff also included a

---

[8] The Court is cognizant of the fact that Defendant Jones's affidavit repeatedly refers to the Property as her "home." (*See* Jones Aff., ECF No. 29, ¶ 3 ("I am the owner of my home . . . ."), ¶ 8 ("The plaintiff's representative advised me that there was nothing that I could do to save my home from foreclosure."), ¶ 14 ("I am the party which stands to lose her home.").) Accordingly, it appears that, notwithstanding her prior representation that she would not live there, Defendant Jones may have been living at the Property, and she appears to have been served there with the summons, complaint, and § 1303 notice. (*See* Restated Note and Addenda, ECF No. 1-1, at ECF p. 66 (occupancy affidavit).) This does not, however, absolve Plaintiff from the requirement of serving the special summons under § 1320, discussed *infra*, nor does it

14

copy of a § 1303 notice for Defendant Jones. (*Id.*) However, at the same time, as set forth *supra* note 2, Plaintiff attached to its complaint a signed affidavit by Defendant Jones, stating that the Property was for investment purposes only, and that neither she nor any of her immediate family members would live there. (Restated Note and Addenda, ECF No. 1-1, at ECF p. 66 (occupancy affidavit).)

Other parts of the record suggest that one or more tenants were residing at the Property (with or without Defendant Jones). For example, the identity of the person who received the summons is unclear; they are merely described as a "co-occupant." (Aff. of Service, ECF No. 11.) There is no evidence in the record about whether this person was a tenant within the meaning of the RPAPL. *See* RPAPL § 1305(1)(c) (defining "Tenant" as "any person who appears as a lessee on a lease . . . ; or who at such time is a party to an oral or implied rental agreement"); *see Plenitude Cap. LLC*, 2019 WL 4014840, at *5. Significantly, the possibility that one or more tenants resided at the Property was expressly contemplated by Plaintiff at the start of this lawsuit; the complaint discusses tenants. (*See* Compl., ECF No. 1, at 7 ("Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings, that an order be entered compelling that the tenants deliver possession of the premises to Plaintiff . . . ."). Likewise, the proposed judgment contemplates relief relating to tenants. (*See* Proposed J. of Foreclosure and Sale, ECF No. 21-3, at ECF p. 5 ("ORDERED, ADJUDGED AND DECREED, that said premises is to be sold in one parcel in 'as is' physical order and condition, subject to . . . any rights of tenants or person in possession of the subject premises . . . .").)

---

address the Court's concerns regarding any other tenants that Plaintiff was required to serve with a § 1303 notice.

To be sure, as noted above, Plaintiff has illustrated possible compliance with RPAPL § 1303 as to Defendant Jones by attaching a § 1303 notice to the affidavit of service pertaining to her. (Aff. of Service, ECF No. 11.) Plaintiff's motion and the record do not, however, establish whether § 1303 notices were sent to any tenants, as required by law. Given the above inconsistencies in the record, "[w]ithout assurance that no tenant resides in the Property, the Court cannot determine that this notice was adequate under New York law." *Plenitude Cap. LLC*, 2019 WL 4014840, at *5. Accordingly, Plaintiff has not established its prima facie case. *Id.*; *cf. United States v. Lancor*, No. 19-CV-936 (BKS) (TWD), 2021 WL 4942083, at *2 (N.D.N.Y. Oct. 22, 2021) ("As the Court has now been provided with evidence [in the form of a 'Vacancy Certificate'] that the Property was vacant at the time the summons and complaint were served, the Court can determine that Plaintiff did comply with Sections 1303 and 1304."); *United States v. Lancor*, No. 19-CV-936 (BKS) (TWD), 2022 WL 4551694, at *2 (N.D.N.Y. Sept. 29, 2022) ("Plaintiff provided evidence that it . . . complied with Sections 1303 and 1304, by providing evidence that the Property was vacant at the time the summons and complaint were served.").

Absent evidence regarding who was residing at the Property when this action was commenced, the Court cannot conclude that Plaintiff has complied with RPAPL § 1303.

### B. RPAPL § 1320

The Court also notes that neither Plaintiff's proposed summons nor Plaintiff's proof of service establishes compliance with RPAPL § 1320's "special summons" requirement. RPAPL § 1320. (Proposed Summons, ECF No. 3; Affs. of Service, ECF Nos. 8, 11.) RPAPL § 1320 special summons are part of the "strict compliance of statutory pre-requisites" required in mortgage foreclosure actions. *Aronson*, 83 N.Y.S.3d at 793.

Because Plaintiff has not established that it properly served the § 1320 special summons, the motion for default judgment should be denied. *See id.* at 794 ("Inasmuch as the plaintiff admits that he failed to comply with the statutory language of RPAPL § 1320 in his actual summons, that failure is not excused, and the complaint must be dismissed.").

For all of these reasons, the Court cannot conclude that Plaintiff has fully complied with RPAPL §§ 1303 and 1320. The Court therefore finds that Plaintiff has failed to meet its burden of establishing it is entitled to relief. *See Plenitude Capital LLC*, 2019 WL 4014840, at *4–5 (denying plaintiff's motion for default judgment of foreclosure and sale for failure to demonstrate compliance with RPAPL § 1303); *Windward Bora, LLC*, 2023 WL 2575582, at *9 (noting dismissal of prior action for failure to demonstrate compliance with RPAPL §§ 1303 and 1320); *Deutsche Bank Tr. Co. Ams. v. Eisenberg*, No. 17879-2008, 2009 WL 1789407, at *6 (N.Y. Sup. Ct. June 23, 2009) ("Plaintiff's failure to submit an attorney's affirmation of compliance with the special summons requirements of RPAPL § 1320, and proof of proper service of the special summons, requires denial of the plaintiff's application . . . ."); *Onewest Bank, N.A.*, 62 N.Y.S.3d at 146 ("Proper service of an RPAPL [§] 1303 notice is a condition precedent to the commencement of a foreclosure action, and noncompliance mandates dismissal of the complaint." (citations omitted)).

Accordingly, the Court finds that Plaintiff's motion for default judgment should be denied. Plaintiff's allegations fail to establish compliance with all of the procedural requirements antecedent to mortgage foreclosure. The district court maintains discretion to deny Plaintiff's motion and dismiss the action in its entirety, or to allow Plaintiff an opportunity to cure its defects. *See United States v. Lancor*, No. 19-CV-936 (BKS) (TWD), 2021 WL 11670838, at *6 (N.D.N.Y. May 12, 2021) ("[S]hould Plaintiff seek to renew this motion for defendant judgment, it must provide some evidence

supporting its allegation, 'on information and belief,' that the Property was not owner-occupied at the time it filed the complaint." (citing *Plenitude Cap. LLC*, 2019 WL 4014840, at *4–5)); *United States v. Lancor*, No. 19-CV-936 (BKS) (TWD), 2022 WL 4551694 (N.D.N.Y. Sept. 29, 2022) (noting, where the plaintiff's prior motion was denied, that the court allowed plaintiff to re-serve the summons and complaint, along with the § 1320 notice).

## CONCLUSION

As the Court finds that Plaintiff has failed to adequately demonstrate proper compliance with New York mortgage foreclosure procedures, the Court respectfully recommends that Plaintiff's motion for a default judgment be denied. Furthermore, the Court respectfully recommends requiring Plaintiff to show cause to demonstrate its compliance with RPAPL §§ 1303 and 1320. *See, e.g., Plenitude Capital LLC*, 2019 WL 4014840, at *8.

\* \* \* \* \*

This Report and Recommendation will be filed electronically and a copy will be sent by mail to Defendants. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Margo K. Brodie at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir.

2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated: Brooklyn, New York
August 18, 2023

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE